IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRAMZON & ASSOCIATES SPECIALTY LITIGATION LLC,<br><br>Plaintiff,<br><br>v.<br><br>STRATEGIC LITIGATION PARTNERS, L.P.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 1:17-cv-01753-EGS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Local Civil Rule 7(h)(1), defendant Strategic Litigation Partners, L.P. ("SLP") submits the following statement of undisputed facts in support of its Motion for Summary Judgment against plaintiff Bramzon & Associates Specialty Litigation LLC ("BASL").

| **SLP FILED UCC-1 FINANCING STATEMENTS BASED UPON ITS SECURITY INTEREST IN RECOVERIES DUE BASL IN TRANSVAGINAL MESH CASES** | |
|---|---|
| 1. | SLP, based in Katy, Texas, provides litigation support services to law firms and corporate law departments – including records collection, management and review.<br><br>(Ex. A (Donna Miller Decl.) ¶2) | |

| | | |
|---|---|---|
| 2. | BASL, based in Washington, D.C., is a law firm organized in the District of Columbia.<br><br>(Verified Complaint [Dkt. No. 1] ("VC") ¶ 3; Ex. B (DX 34)) | |
| 3. | On February 17, 2017, BASL signed the Direction of Proceeds Letter ("Direction Letter").<br><br>(VC ¶¶ 12, 25 and Exhibit 4; D's Answer and Counterclaims [Dkt. No. 21] ("Answer") ¶ 25; Ex. C (Direction Letter)) | |
| 4. | On July 31, 2017, SLP filed with the Washington, D.C. Recorder of Deeds a UCC-1 Financing Statement, which was assigned document number 2017083804.<br><br>(VC ¶22 and Exhibit 3; Answer ¶ 22) | |
| 5. | On August 23, 2017, SLP filed with the Washington, D.C. Recorder of Deeds a UCC-3 Amendment to Financing Statement, which was assigned document number 2017093500.<br><br>(VC ¶25 and Exhibit 4; Answer ¶ 25) | |
| **BASL RELIES ON ITS AGENTS – INCLUDING THE RECORD COMPANY AND KEY LEGAL SERVICES HEADED BY MITCH HAMMER – TO WORK ON ITS TRANSVAGINAL MESH CASES AND TO SPEAK ON ITS BEHALF TO CLIENTS AND VENDORS** | | |
| 6. | BASL has no employees. Mr. Bramzon is the firm's only lawyer, and its majority owner. BASL is focused on representing clients in mass tort cases, including in products liability cases against transvaginal mesh ("TVM") manufacturers. Some of the BASL's TVM's cases were obtained by purchasing law firms with TVM cases.<br><br>(Ex. D (Bramzon Dep.) at 33:15-20, 38:13-39:9, 40:21-41:3, 64:7-15, 109:3-8; 110:6-112:6; Ex. F (DX 31)) | |

**Defendant's Statement of Material Facts not in Dispute**
**Page 2**

| | | |
|---|---|---|
| 7. | BASL relies on its agents to handle the tasks of client intake, client retention, records collection, records review, file audits, as well as BASL's firm management, such as marketing and accounting services.<br><br>(VC ¶¶ 6, 7; Ex. G (DX 13); Ex. H (DX 14); Ex. I (DX 15)) | |
| 8. | BASL's agents handling these tasks include The Record Company, LLC ("TRC"), Key Legal Services, LLC ("Key Legal"), Smart Legal Solutions, LLC ("Smart Legal") and Elevant Solutions, LLC. Mitchell ("Mitch") Hammer is the CEO of each of them.<br><br>(Ex. G (DX 13); Ex. H (DX 14); Ex. I (DX 15); Ex. J (M. Hammer Dep.) at 10:8-21, 11:12-16; Ex. E (D. Sugimoto Dep.) at 5:3-9, 13:4-7, , 22:9-16) | |
| 9. | Mitch Hammer lives in Florida. He is a convicted felon, having pleaded guilty in 1997 in the U.S. District Court for the Southern District of Florida to counts of bankruptcy fraud, money laundering and conspiracy. He is not a lawyer but works in the mass torts industry through his companies, providing litigation support.<br><br>(Ex. J (M. Hammer Dep.) at 4:15-16; 7:7-11:16) | |
| 10. | Mr. Bramzon knows that Mitch Hammer is a felon.<br><br>(Ex. D (Bramzon Dep.) at 15:12-17) | |
| 11. | Mr. Bramzon regards Mr. Hammer's companies – including TRC and Key Legal – as being part of the "Bramzon team" that "contributes to the pursuit of results" for BASL's clients. Sometimes Mr. Bramzon refers to TRC, Key Legal and the other Hammer companies as "the village." BASL and the Hammer companies are part of a | |

|    |    |    |
|----|----|----|
|    | "structure," whereby BASL outsources its "labor intensive" work to the companies – to talk to the clients, to get the medical records and to do the nurse review – while Bramzon "is the name people see" and the "buck stops" with Bramzon.<br><br>(Ex. D (Bramzon Dep.) at 40:2-44:21, 182:11-183:15, 185:12-186:12; Ex. K (DX 51)) |    |
| 12 | Mr. Bramzon allows TRC and Key Legal employees to hold themselves out as being part of BASL's team by representing that they are part of BASL.<br><br>(Ex. D (Bramzon Dep.) at 40:2-42:1; 83:10-85:3) |    |
| 13 | Mr. Bramzon has authorized Key Legal to interact with BASL's clients about their TVM cases, including in interviewing them about their claims.  Mr. Bramzon cannot recall the last time he talked to one of BASL's TVM clients.<br><br>(Ex. D (Bramzon Dep.) at 40:2-42:1; 83:10-85:3) |    |
| 14 | One of the people from Key Legal who has communicated with BASL's TVM clients and vendors on BASL's behalf is Heidi Laub.  Ms. Laub lives in Florida and now works for Smart Legal, which is another Mitch Hammer company related to Key Legal.<br><br>(Ex. J (M. Hammer Dep.) at 30:3-18) |    |
| 15 | Mr. Bramzon has allowed Ms. Laub to hold herself out as an "Administrator" of BASL. In e-mails that Ms. Laub has sent regarding BASL's clients, Mr. Bramzon has seen and not objected to her use of the title BASL "Administrator" and the BASL logo in her e-mail signature.  He has also allowed her to use BASL's domain name in sending and receiving e-mails – specifically, an e-mail |    |

| | | |
|---|---|---|
| | address at bramzonlawgroup.com. Mr. Bramzon uses an e-mail address with the same domain name to conduct BASL business.<br><br>(Ex. D (Bramzon Dep.) at 41:19-43:1; 81:3-82:20; Ex. L (DX 32)) | |
| **THROUGH ITS AGENTS, BASL HIRED SLP TO WORK ON BASL'S TVM CASES, WHICH SLP THEN DID UNTIL IT STOPPED DUE TO NONPAYMENT** | | |
| 16 | SLP first became acquainted with BASL in June 2016, when Heidi Laub, who identified herself as the "Administrator" for BASL, requested a proposal from SLP for work on TVM mass tort cases arising, which SLP provided on June 6, 2016.<br><br>(Ex. A (Miller Decl.) ¶ 3 and Ex. 1) | |
| 17 | In July 2016, SLP met with Ms. Laub, Mitch Hammer and his son David Hammer, who identified themselves as working for Excelium Management, LLC, to discuss contract terms and workflow items.<br><br>(Ex. A (Miller Decl.) ¶ 4 and Ex.2) | |
| 18 | On July 22, 2016, Ms. Laub sent credentials to SLP granting SLP access to BASL's database of its TVM cases that SLP was to review.<br><br>(Ex. A (Miller Decl.) ¶ 5) | |
| 19 | On July 25, 2016, Mitch Hammer, who had represented himself as being the "Chief Operating Officer" of Excelium Holdings and Excelium Management, emailed agreement to the Pricing Proposal that SLP had prepared for BASL and Excelium and copied Heidi Laub.<br><br>(Ex. A (Miller Decl.) ¶ 6 and Ex. 3] | |
| 20 | On July 25, 2016, Ms. Laub, released 387 BASL TVM cases to SLP for record retrieval and provided a Letter of Representation from BASL, signed by Mr. Bramzon, for SLP's use | |

| | | |
|---|---|---|
| | in obtaining the release of the medical records of BASL's TVM clients from their healthcare providers.<br><br>(Ex. A (Miller Decl.) ¶ 7 and Ex. 4) | |
| 21. | SLP then began work on BASL's TVM cases and continued that work through October 2016.<br><br>(Ex. A (Miller Decl.) ¶8) | |
| 22 | In doing its work, SLP advanced payments to medical records providers on behalf of BASL and invoiced those amounts in accordance with the terms of the Pricing Proposal.<br><br>(Ex. A (Miller Decl.) ¶ 9) | |
| 23 | SLP also paid nurses to provide medical record review and summarize their findings for BASL and invoiced those amounts in accordance with the terms of the Pricing Proposal.<br><br>(Ex. A (Miller Decl.) ¶ 9) | |
| 24 | By November 2016, SLP was concerned that its invoices had not been paid, and so it stopped work.<br><br>(Ex. A (Miller Decl.) ¶ 9) | |
| 25 | Mr. Bramzon knew that SLP was working on BASL's TVM cases and communicating directly with BASL's clients regarding those cases. Mitch Hammer told him that at the time.<br><br>(Ex. D (Bramzon Dep.) at 165:21-169:1, 172:2-173:4; Ex. M (DX 26); Ex. N (DX 49)) | |

**UPON SLP'S STOPPING WORK ON BASL'S TVM CASES, BASL ENTERED INTO WRITTEN AGREEMENTS WITH HAMMER'S COMPANIES AND AGREED TO COOPERATE IN PROVIDING SECURITY/COLLATERAL AGREEMENTS TO SLP IF NEEDED**

| | | |
|---|---|---|
| 26 | After SLP stopped work on BASL's TVM cases, BASL entered into a Services Agreement with TRC to provide, among other things, client intake, record collection, and medical records review.<br><br>(Ex. H (DX 14); Ex. J (M. Hammer Dep.) at 25:7-15) | |
| 27 | BASL also entered into a Services Agreement with Key Legal.<br><br>(Ex. I (DX 15)) | |
| 28 | The description of services to be provided to BASL by TRC and Key Legal are identical.<br><br>(Ex. H (DX 14) at Exhibit A; Ex. I (DX 15) at Exhibit A) | |
| 29 | TRC and Key Legal are subsidiaries of Smart Legal.<br><br>(Ex. O (DX 19); Ex. J (M. Hammer Dep.) at 14:23-25; Ex. E (D. Sugimoto Dep.) at 27:12-17) | |
| 30 | On November 23, 2016, Mitch Hammer advised SLP that the law firm Napoli Shkolnik had been providing the funding for the work on BASL's TVM cases, that that funding had stopped "over the last few months," and that he had expected SLP's proof packets to "normalize" Napoli's funding, but it had not.<br><br>(Ex. A (Miller Decl.) ¶ 10 and Ex. 5) | |
| 31 | SLP was then unwilling to resume work on BASL's TVM cases without a signed contract that contained security for past due payments and future invoices.<br><br>(Ex. A (Miller Decl.) ¶ 11) | |
| 32 | On January 27, 2017, BASL and Smart Legal (an entity that had been formed by Mitch Hammer's associates just 10 days earlier), | |

**Defendant's Statement of Material Facts not in Dispute**
**Page 7**

| | | |
|---|---|---|
| | discussed revised business arrangements that required BASL to cooperate in providing "security/collateral agreements/guarantee, if needed, by SLP or other providers." (Ex. P (DX 9); Ex. Q (G. Sugimoto Dep.) at 36:14-25; Ex. K (DX 51) at 4-5) | |
| 33 | On February 1, 2017, BASL entered into a Services Agreement with Smart Legal in which BASL agreed:<br><br>• To make Smart Legal its exclusive provider of legal case administration, client intake, client retention, client management, and record retrieval and review services, including the staffing of BASL's office with affiliated and independent vendors.<br><br>• To permit Smart Legal to take direction from the "representatives, employees agents and/or professionals" with respect to the services provided, and to be bound by the direction Smart Legal takes from such representatives "to the same extent as if such requests, advice or information were provided by [BASL]."<br><br>• To permit Smart Legal to employ Key Legal and TRC "to provide any of the Services, though all billing will be done by [Smart Legal]" and [Smart Legal] shall pay its subsidiaries for work they may perform.<br><br>(Ex. G (DX 13) at 1) | |
| 34 | The identical grant of authority by BASL appears in the Services Agreement between BASL and TRC.<br><br>(Ex. H (DX 14) at 1) | |

**Defendant's Statement of Material Facts not in Dispute**
**Page 8**

| | | |
|---|---|---|
| 35 | The identical grant of authority by BASL appears in the Services Agreement between BASL and Key Legal.<br><br>(Ex. I (DX 15) at 1) | |
| 36 | The description of services to be provided to BASL by Smart Legal is identical to those undertaken to be provided by TRC and Key Legal. They are set forth in Exhibit A to each agreement.<br><br>(Ex. G (DX 13); Ex. H (DX 14); Ex. I (DX 15)) | |
| 37 | The fee structure for the fees that BASL must pay Smart Legal, TRC and Key Legal is identical for each company, and is set forth in Exhibit C to each agreement – carrying an interest charge of 17.5%.<br><br>(Ex. G (DX 13); Ex. H (DX 14); Ex. I (DX 15)) | |
| 38 | SLP was not provided with copies of the services agreements that BASL had with TRC, Key Legal and Smart Legal until this litigation.<br><br>(Ex. A (Miller Decl.) ¶ 12) | |
| | **SLP RESUMED WORK ON BASL'S TVM CASES ONCE IT SECURED AN INTEREST IN BASL'S RECOVERIES FROM THE CASES** | |
| 39 | On February 17, 2017, TRC entered into a Services Agreement with SLP which provided, in part:<br><br>• A notice that Key Legal was in the business of providing BASL with call center services for client intake and retention, client support services and other services contracted through TRC, identified as legal case administration and management, record retrieval and review and other services, and employing company staff and | |

| | | |
|---|---|---|
| | independent contracted providers for law firms.<br><br>• SLP would take direction from "Client Parties" which were identified as TRC, Key Legal, Smart Legal, Hammer Capital Group and Taisho Investments, LLC.<br><br>• The services described at Exhibit A of the contract were for a closed set of claimants, identified as "pre-retained" who has "already retained Client's legal representation through Client's or Client's agents' efforts, without the intake/retention services or assistance of SLP."<br><br>• That "Client currently owes SLP the amount set forth on the schedule of invoices on Exhibit F."<br><br>• "Client agrees to give a Direction Letter to BASL, consistent with that set forth on 'Exhibit G – Direction Letter' instructing BASL to pay the amounts due to BASL for each of the claimants for which BASL receives monies for settling their cases" and that "BASL shall be instructed to subtract payments made to SLP on account prior to receiving the settlement amounts."<br><br>• SLP was to provide BASL with monthly invoices "billed by claimant case number" by emailing invoices to ap@bramzonlawgroup.com"<br><br>(Ex. O (DX 19) at 1,2 and Ex. A) | |
| 40 | Between February and July 2017, in reliance on the security provided in the services contract and Direction Letter, SLP provided services to BASL, and sent invoices for those | |

| | | |
|---|---|---|
| | services to BASL, billed by claimant case number, to ap@bramzonlawgroup.com.<br><br>(Ex. A (Miller Decl.) ¶¶ 13,14) | |
| 41 | The amounts owed to SLP based on its invoices are recorded in BASL's financial statements within the account payable to TRC.<br><br>(Ex. R (DX 43); Ex. A (D. Sugimoto Dep.) at 141:22-142:6) | |
| 42 | As of February 23, 2017, SLP's unpaid invoices total $3,236,952.46.<br><br>(Ex. A (Miller Decl.) ¶ 15) | |
| 43 | Each unpaid SLP invoice continues to accrue interest at the contract rate of 1.5% per month running from the date 30 days after its payment due date.<br><br>(Ex. O (DX 19) at 2) | |
| 44 | As of February 23, 2018, SLP's unpaid invoices have accrued interest in the amount of $503,809.42.<br><br>(Ex. A (Miller Decl.) ¶ 16) | |
| **BASL HAS NO REALISTIC PROSPECT OF OBTAINING FINANCING OR EARNING MILLIONS OF DOLLARS IN PROFITS WHETHER OR NOT THE FINANCING STATEMENTS REMAIN ON FILE** | | |
| 45 | On August 1, 2017, Napoli Shkolnik & Associates PLLC, also filed UCC-1 financing statements against BASL which is second to SLP's lien and lists the same case files.<br><br>(Ex. A (Miller Decl.) ¶ 17 and Ex. 6) | |
| 46 | The easiest way for BASL to get paid is to settle the cases that it has – with the help of its experienced co-counsel Paul Napoli – and that | |

|    |    |    |
|----|----|----|
|    | is the direction in which BASL is moving, while also continuing to try to get financing.<br><br>(Ex. D (Bramzon Dep.) at 196:2-15, 198:19-199:3) |    |
| 47 | Mr. Bramzon has never tried or litigated a TVM case.  He has never entered an appearance as an attorney for any TVM client in the multi-district TVM litigation ("MDL") in federal court in West Virginia.  He cannot recall which West Virginia district has the MDL.  He has never been to any of the hearings in the MDL.  He does know who the plaintiffs' lead counsel is in the MDL, or anyone who is on the executive or litigation steering committees.  He does not know what the MDL common benefit fund is or whether BASL is participating in it.<br><br>(Ex. D (Bramzon Dep.) at 45:2-51:3, 65:6-10, 76:3-20, 164:9-165:14) |    |
| 48 | So far, BASL's only result for its TVM clients is the settlement of one group of cases.  That settlement was not handled by BASL.  Rather, it was handled by another law firm with which BASL has a co-counsel agreement, although Mr. Bramzon does not know how that agreement came about. Mr. Bramzon does not know the date of the settlement, the amount of the settlement or who was representing the defendant manufacturer in the group of cases. BASL did not draw a fee from the settlement because the fee was claimed by another law firm to which BASL is indebted – the Napoli Skolnick firm.<br><br>(Ex. D (Bramzon Dep.) at 45:2-51:3, 65:6-10) |    |
| 49 | BASL has not yet had a profitable year.<br><br>(Ex. D (Bramzon Dep.) at 67:12-14, 213:13-14) |    |
| 50 | BASL is millions of dollars in debt. |    |

| | | |
|---|---|---|
| | (Ex. S (BASL Balance Sheet 12/31/17) | |
| 51 | Even though he is the majority owner of BASL, is BASL's only lawyer, signed the Verified Complaint in this case, claims on BASL's website to have represented "thousands" of mass tort victims, and signed BASL's interrogatory responses in this case, Mr. Bramzon knows very little about the business of BASL, its clients, its finances or its cases. For example, he does not know, does not recall or is not sure regarding:<br><br>• How long he has been doing mass torts cases;<br><br>• How many TVM cases BASL has;<br><br>• Whether he has ever sent a demand letter on behalf of a TVM client;<br><br>• Whether he has ever negotiated a tolling agreement on behalf of a TVM client;<br><br>• The statute of limitations for a TVM claim for a client in the District of Columbia or Maryland (where Mr. Bramzon is licensed to practice law) or how to analyze whether a TVM client's claim is time barred;<br><br>• Whether he has ever dealt with a claims administrator regarding a TVM client's case;<br><br>• Who drafted the form retainer agreement that BASL uses with its TVM clients – which calls for a 40-45% contingent fee;<br><br>• Whether he has ever taken continuing legal education on personal injury, products liability, medical device or mass torts cases; | |

**Defendant's Statement of Material Facts not in Dispute**
**Page 13**

|  |  |  |
|---|---|---|
|  | - How many other law firms he has besides BASL and the Law Office (he knows he has others) and who formed them;<br><br>- How much he paid for the mass torts firms (so that he could represent their clients), where he got the money to pay for the firms, and who handled the negotiations for their purchase on his behalf;<br><br>- Where the phone number on BASL's website rings, when that number was set up, who set the number up, whether it is BASL's main phone number, whether he has ever given anyone directions on how calls to that number should be answered;<br><br>- The size of Ms. Sugimoto's equity stake in BASL;<br><br>- The size of BASL's debt;<br><br>- Why for a time BASL was receiving a weekly payment of $2,000 from one of its vendors;<br><br>- Who is paying the fees of the lawyer representing BASL in this case; and<br><br>- How BASL arrived at the $109 million damages number in its Verified Complaint in this case.<br><br>(Ex. D (Bramzon Dep). at 10:3-13, 17:18-19:12, 34:2-40:20, 72:14-73:21, 75:15-21, 95:8-17, 117:19-118:8 163:19-164:8, 189:21-190:19, 212:14-214:15; Ex. F (DX 31)) |  |

/s/ Ellen D. Marcus_____
Ellen D. Marcus (D.C. Bar No. 475045)
Kathleen J.L. Holmes (D.C. Bar No. 448313)
HOLMES COSTIN & MARCUS PLLC
301 N. Fairfax Street, Suite 202
Alexandria, Virginia 22314
Telephone: (703) 260-6401
Fax: (703) 439-1873
emarcus@hcmlawva.com
kholmes@hcmlawva.com

*Counsel for the Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record and provide a separate copy to Plaintiff's counsel in accordance with the Court's Standing Order.

/s/ Ellen D. Marcus_____
Ellen D. Marcus